# EXHIBIT A

 Georgia Tech Athletic Association

## EMPLOYMENT CONTRACT

This Employment Contract (hereinafter referred to as the "Contract") is made by and between the Georgia Tech Athletic Association (hereinafter referred to as the "ASSOCIATION"), and MaChelle Joseph (hereinafter referred to as "JOSEPH"). The effective date of this Contract is October 30, 2014.

## WITNESSETH

WHEREAS, the Georgia Institute of Technology (the "Institute") employs JOSEPH as Head Women's Basketball Coach. As Head Women's Basketball Coach, JOSEPH is responsible for the operation of the women's intercollegiate basketball program conducted by the ASSOCIATION on behalf of the Institute; and

NOW, THEREFORE, in consideration of JOSEPH's employment as Head Women's Basketball Coach, the ASSOCIATION, in furtherance of its mission of supporting the intercollegiate athletic programs of the Institute, desires to enter into this contract in order to provide additional and supplemental benefits to JOSEPH.

## ARTICLE I

## TERM AND COMPENSATION

## BASE SALARY

In consideration for JOSEPH's services and for satisfactory performance of the terms, conditions, and duties stated herein, JOSEPH will be compensated as described in this Article:

This Contract is for a term of six (6) years, beginning April 1, 2014 and ending March 31, 2020. The annual schedule for the term is April 1 through March 31. Annual base salary amounts are as follows and will be paid in monthly installments.

|  |  |
|---|---|
| 2014 – 2015 | $334,000 |
| 2015 – 2016 | $342,000 |
| 2016 – 2017 through 2019 – 2020 | $350,000 |

## PERSONAL APPEARANCES AND SPEAKING FEE

JOSEPH agrees to make a minimum of eighteen (18) appearances or speaking engagements per year for the Alexander-Tharpe Fund, the Alumni Association, the Georgia Tech Foundation and all similar official Georgia Tech entities or affiliated organizations for the purpose of furthering the mission and interests of Georgia Tech athletics, if requested to do so. In exchange for this agreement, the ASSOCIATION agrees to pay JOSEPH an annual amount according to the following schedule, to be paid in equal monthly installments to JOSEPH or to her legal corporation on her behalf, as determined by JOSEPH. Monthly payments will be made the last working day of each month.

| | |
|---|---|
| 2014 – 2015 | $225,000 |
| 2015 – 2016 | $250,000 |
| 2016 – 2017 | $275,000 |
| 2017 – 2018 through 2019 – 2020 | $300,000 |

## ARTICLE II

## DUTIES

The parties agree that JOSEPH'S duties as Head Women's Basketball Coach of the Georgia Institute of Technology shall include, but are not limited to, the following:

1.  Report to the Senior Woman Administrator and plan, develop, administer, and evaluate the basketball program.

2.  Abide by all applicable law, rules and regulations, including NCAA, ACC, Board of Regents, Institute and ASSOCIATION rules and policies.

3.  Advise the basketball staff and team of all applicable ASSOCIATION and NCAA rules and policies, as directed by the administration of the ASSOCIATION, and make a determined effort to ensure that the basketball staff and team are in compliance with said rules and policies.

4.  Cooperate with the ASSOCIATION administration in monitoring the academic progress of student-athlete basketball players to facilitate pursuit of a baccalaureate degree.

5.  Recruit, direct, supervise and evaluate the assistant basketball coaches and all related basketball support personnel.

6.   Recommend hiring, selection, compensation, discipline, and discharge of assistant basketball coaches and all related basketball support personnel.

7.   Recommend students for athletic grant-in-aid scholarships from the ASSOCIATION.

8.   Plan and supervise programs for player training and conditioning, using program development input from support sources such as the Director of Sports Medicine, Team Physician, and Strength and Conditioning Coach.

9.   Develop, supervise, and conduct the recruiting program for student-athlete basketball players.

10.  Direct student-athlete basketball players to the appropriate ASSOCIATION or Institute resource for assistance regarding financial aid, academic advisement, and general student services.

11.  Provide appropriate program safety requirements by relying upon the professional advice of the athletic training staff and the team physician assigned by the ASSOCIATION.

12.  Evaluate individual and team strengths and develop strategies for skill improvement.

13.  Supervise all games, scrimmages, and practices or delegate this responsibility to an appropriate staff member in JOSEPH'S absence.

14.  Discipline student-athletes for violations of team rules, ASSOCIATION regulations or conduct impacting upon team matters, team policies or the reputation of the ASSOCIATION.

15.  Oversee expending operational resources budgeted to the basketball program in a manner consistent with ASSOCIATION policy to include timely submission of all paperwork required.

16.  Cooperate with the Athletic Communications and Public Relations staff in the preparation of brochures, programs, statistical reports, and press releases in support of the basketball program.

17.  Assist The Alexander Tharpe Fund, Inc., when reasonably requested, in fund-raising efforts to support the basketball program.

18.     Oversee basketball team and staff activity relating to public relations and promotions functions for the basketball program.

19.     Represent the ASSOCIATION, when reasonably requested, in organizations governing the intercollegiate basketball program, as deemed necessary by the Director of Athletics, such as NCAA, ACC, etc.

20.      As schedule permits, assist and promote the ASSOCIATION by soliciting and encouraging contributions to and support of the ASSOCIATION'S intercollegiate athletic program.

21.      As schedule permits, represent the ASSOCIATION and its intercollegiate athletic program at appropriate events, meetings and in webcast videos or other forms of media.

22.     Perform duties assigned by the Senior Woman Administrator customary to the position of Head Women's Basketball Coach and the operation of the basketball program.

## ARTICLE III

### BENEFITS

In consideration for JOSEPH'S services and for her satisfactory performance of the terms, conditions and duties stated herein, the ASSOCIATION agrees to provide JOSEPH following benefits:

### USE OF AUTOMOBILE

The ASSOCIATION shall annually provide JOSEPH with either (i) an automobile allowance in the amount of one thousand, three hundred dollars ($1,300.00) per month, or (ii) one dealer vehicle and a stipend of $650.00 per month.  Related income taxes will be withheld from JOSEPH through the payroll reporting system.

### CLUB MEMBERSHIPS

The ASSOCIATION agrees to provide JOSEPH with a membership to a Country Club provided the initiation fee is waived and, during the period this agreement is in effect, to pay the monthly dues and basketball business related charges for it.  While not a requirement, it is the express request of the ASSOCIATION that payments made, pursuant to this paragraph be used for

JOSEPH'S relaxation and enjoyment, and to market and promote the Georgia Institute of Technology, its academic curriculum, basketball program and alumni relations and fund raising. In absence of a membership at a single club, the ASSOCIATION will pay JOSEPH a monthly club allowance of two hundred sixty-five dollars ($265.00) per month. This election should be made as of the contract date.

## **EXEMPLARY PERFORMANCE**

In recognition of the fact that exemplary performance by the intercollegiate basketball team produces both tangible and intangible benefits for the ASSOCIATION and the Georgia Institute of Technology by focusing favorable, public attention on the ASSOCIATION and the Georgia Institute of Technology, and in further recognition of the additional work and sacrifice of JOSEPH to prepare and participate in a pre-season or post-season tournament game, the ASSOCIATION shall pay additional compensation to JOSEPH in each year of her Contract in which any of the following events occur:

1.   JOSEPH shall be paid an additional thirty-five thousand dollars ($35,000.00) for each season in which the team wins the ACC regular season championship;
OR
2.   JOSEPH shall be paid an additional twenty-five thousand dollars ($25,000.00) for each season in which the team wins the ACC post-season championship;

3.   JOSEPH shall be paid an additional fifteen thousand dollars ($15,000.00) for each season in which the team participates in the NCAA post –season championship tournament ("NCAA Tournament");

4.   JOSEPH shall be paid an additional fifteen thousand dollars ($15,000.00) per win in the NCAA Tournament;

5.   JOSEPH shall be paid an additional fifty thousand dollars ($50,000.00) for participation in the National Final Four of the NCAA tournament;

6.   JOSEPH shall be paid an additional fifty thousand dollars ($50,000.00) for winning the NCAA National Championship;

7.   JOSEPH shall be paid an additional five thousand dollars ($5,000.00) for each season in which the team participates in the post season National Invitational Tournament (the "NIT");

8.      JOSEPH shall be paid an additional ten thousand dollars ($10,000.00) in any academic year in which the Georgia Tech Women's Basketball team earns an NCAA Academic Performance Rate of at least 950;

9.      JOSEPH shall be paid five thousand dollars ($5,000.00) for being named ACC Coach of the Year as determined by the ACSMA;

The amounts set forth above are cumulative and, in any Contract Year, JOSEPH may earn either of the amounts set forth in subsections (1) and (2) and any amounts earned in subsections (3) – (9) above. The maximum performance bonuses (noted in sections (1) – (9) above) earned in any one Academic Year shall not exceed two hundred thousand dollars ($200,000). It is understood and agreed that any incentive earned under this paragraph shall be payable 30 days following the end of the term year of the season in which it is earned and JOSEPH will be deemed fully vested and entitled to any incentive at the conclusion of the season in which it was earned, despite termination of employment subsequent thereto as long as JOSEPH participated in such event.

JOSEPH shall also be paid a series of lump sum longevity bonuses for the completion of the following milestone seasons as Head Coach for the ASSOCIATION.

| Season Completed | Employed Through | Pay Amount | Pay Date |
|---|---|---|---|
| 2016 – 2017 | March 31, 2017 | $100,000.00 | April 30, 2017 |
| 2019 – 2020 | March 31, 2020 | $100,000.00 | April 30, 2020 |

## SIDELINE, SHOES, HATS AND APPAREL

JOSEPH agrees to her right to negotiate separate NON "Official Provider" contracts for apparel, footwear, hats, uniforms, or other items. The ASSOCIATION will negotiate all "Official Provider" contracts for all apparel. The parties agree that all basketball-related contractual agreements between JOSEPH and persons, parties, or legal entities of any type, outside of the ASSOCIATION, shall first receive prior written approval from the ASSOCIATION'S Director of Athletics before commitments are made.

## MISCELLANEOUS

The ASSOCIATION agrees to grant JOSEPH the following additional benefits because of her position as Head Women's Basketball Coach:

1.      JOSEPH shall be entitled to life insurance (a twenty-five thousand dollar policy) provided to all employees plus an additional three times her annual base salary through the Board of Regents Group Life Insurance Policy, medical insurance, paid vacation leave, sick leave, and retirement benefits as other non-classified ASSOCIATION

employees.  Such employee benefits are set out in detail in the Georgia Institute of Technology website, to which reference is here made and which provisions are incorporated herein by reference

2.      Tickets - JOSEPH shall receive six (6) tickets to all home men and women's basketball games at no cost, six (6) tickets to all home football games and two (2) tournament tickets at no cost.  These tickets will be the best available and will be considered a taxable benefit.

2.      Summer Basketball Camps - JOSEPH shall be entitled to utilize the facilities of the Georgia Tech Athletic Association, to conduct an annual summer basketball camp.  JOSEPH will be responsible for any costs incurred by GTAA as a result of wear and tear caused by such camps to include custodial services.  The ASSOCIATION waives any interest in the revenue generated by the camp conducted by JOSEPH.

3.      Speaking Engagements, Clinics, Publications, Coaching Videos, and Other Outside Activities - The ASSOCIATION expressly authorizes JOSEPH to participate in any speaking engagements, clinics, public appearances, videos, television appearances, and authorship of basketball-related books and articles, provided said activity does not conflict with JOSEPH'S responsibilities as Head Women's Basketball Coach and ASSOCIATION waives any interest in the revenue generated by these activities provided the revenue is disclosed annually in accordance with NCAA and ASSOCIATION policies.

4.      Contract Renegotiation:  There will be no automatic extension of this Contract.  JOSEPH and ASSOCIATION agree to a good faith reconsideration of the terms and conditions of the Contract after the completion of the 2016-2017 season.

5.      Notwithstanding any other provision of this contract, the Board of Regents has authorized the President of the Institute to implement a mandatory furlough program requiring employees to take not more than 10 days of unpaid annual leave.  In the event it becomes necessary for the President to exercise this authority, employee furloughs will be implemented in accordance with guidelines promulgated by the Office of the Chancellor.

## ARTICLE IV

### Outside Income

The parties agree that all basketball-related contractual agreements between JOSEPH and persons, parties, or legal entities of any type, outside of the ASSOCIATION, shall first receive

prior written approval from the President of the ASSOCIATION for all athletically related income, said approval being in addition to the requirements of NCAA Bylaw 11.2 and its subparts and any amendments thereto. The request for approval shall be in writing and shall include the amount and sources of the income. Sources of such income shall include but are not limited to income from annuities, sports camps, country club memberships, complimentary ticket sales, television and radio programs and endorsement or consultation contracts for athletic shoe, apparel or equipment manufacturers. In addition, such outside contracts shall be consistent with ASSOCIATION policies and procedures and the laws of the State of Georgia.

## ARTICLE V

## DEATH OR DISABILITY

Notwithstanding any other provision of this contract, the Contract shall terminate automatically and become null and void upon the death of JOSEP or if JOSEPH becomes totally or permanently disabled (as determined by the Institute's long-term disability carrier) or is otherwise unable to perform the essential functions of the job. If the Contract is terminated under this Article, no further money, compensation, or benefits shall be due to JOSEPH.

## ARTICLE VI

## CONDITIONS OF EMPLOYMENT

JOSEPH shall devote her full time, attention, energies and abilities to her duties as the ASSOCIATION'S Head Women's Basketball Coach, and during her employment, except as otherwise herein provided and authorized, she shall not engage in any other business or occupation, without first obtaining the written approval of the Athletic Director.

JOSEPH shall recognize and comply with the laws, policies, rules and regulations of and governing the Georgia Institute of Technology, the Georgia Tech Athletic Association and the rules of National Collegiate Athletic Association and the Atlantic Coast Conference as now constituted or as they may be amended during the term hereof. JOSEPH shall also endeavor to ensure that all assistant coaches and any other employees for whom she is administratively responsible comply with the aforesaid policies, rules and regulations as well.

JOSEPH shall have the right to incorporate herself into a personal service corporation for the purposes of protecting her personal assets from liability resulting from sports camp or other professional activities, and/or to shelter self-employed income in the appropriate retirement plan vehicles resulting from sources outside the ASSOCIATION'S system, and approved herein.

Any income resulting from clinics, professional activities, endorsements, speaking engagements, or self-employment income generated from activities relating to her conduct as Basketball Coach shall be non-W-2 income and paid directly to JOSEPH, but reportable to the NCAA and IRS.

Furthermore, it is recognized that any of the aforementioned income and benefits shall be subject to NCAA rules and regulations regarding the reporting and institutional controls regarding JOSEPH'S outside income as required by that governing body and its members, and must be consistent with ASSOCIATION and NCAA policies and procedures.

JOSEPH shall have the right to operate basketball camps during the summer months, using the ASSOCIATION'S facilities, personnel and other services, provided she provides adequate insurance against any claim, demand or action that might arise as a result of such operations. Staff compensation shall be solely subject to JOSEPH'S control. Any other costs incurred by the ASSOCIATION as a result of these camps will be the responsibility of JOSEPH.

JOSEPH shall conduct such travel as is necessary to carry out her duties as Head Women's Basketball Coach, and he shall be entitled to reimbursement for transportation and per diem expenses as authorized by State law and ASSOCIATION policy upon presentation of the appropriate vouchers and receipts in a timely manner. Said reasonable travel expenses shall include, but not be limited to, airline transportation, hotel expenses, meals, rental cars, and convention expenses including registration fees.

## ARTICLE VII

### TERMINATION

This Contract may be terminated for cause prior to the end of the Contract Term as described in this Article. In the event of termination for cause, the ASSOCIATION shall immediately be relieved of any and all liabilities and/or obligations to JOSEPH under the Contract, other than for monies earned and due for services rendered prior to termination. Any such termination or suspension shall not be subject to the arbitration provisions hereafter set out.

This Contract will terminate if the employment of JOSEPH as the Institute's Head Women's Basketball Coach is terminated and if, in the sole discretion of the President and Chairman of the Athletic Association, "Good Cause" exists for such termination. "Good Cause" includes, but is not limited to, any of the following:

1. Conviction of (or entry into pre-trial intervention as a result of) a crime involving moral turpitude or conviction of a felony;

2. Involvement in conduct that the Athletic Association, in its sole discretion, reasonably considers injurious to the reputation of the Association or the Institute.

3. JOSEPH's failure to substantially perform any of her duties under this Contract;

4. The committing of a major violation of NCAA Legislation by JOSEPH while employed by the Institute or while previously employed at another NCAA member institution, or the committing of a series or pattern of secondary violations of NCAA Legislation while employed by the Institute;

5. The committing of a major violation of NCAA Legislation by a member of JOSEPH's staff while at the Institute of which JOSEPH had prior actual knowledge or should have had prior actual knowledge and did not report in a timely fashion in accordance with all appropriate NCAA, Association and Institute rules, policies and regulations;

6. The committing of a major violation of NCAA Legislation by any representative of the Institute's athletics programs while JOSEPH is at the Institute and of which JOSEP has actual knowledge or should have had actual knowledge, and which JOSEPH did not report in a timely fashion in accordance with all appropriate NCAA, Association and Institute rules, policies and regulations;

7. Serious or repeated misconduct; or

8. Any cause adequate to justify the termination of any other non-classified Institute employee.

JOSEPH shall be given thirty (30) days' notice, or thirty days' pay in lieu of notice, of any termination for "Good Cause".

The Association's right to terminate this Contract for cause shall not be construed to preclude the Association's imposition of lesser discipline (such as suspension with or without pay or other sanctions) on JOSEPH, whether for personal or Departmental violation of rules, policies or regulations, or for any other breach of this Contract.

JOSEPH shall have the right to terminate this agreement immediately in exchange for a buyout of two hundred, fifty thousand dollars ($250,000.00) in the first and second year and two hundred thousand dollars ($200,000.00) for any year thereafter, payable within sixty (60) days of such notice to the ASSOCIATION.

In the event the ASSOCIATION gives notice of termination to JOSEPH prior to the end of the contract term for any reason other than "good cause" (as defined herein), the ASSOCIATION shall buy out its further obligations under the Contract by providing Severance Pay to JOSEPH payable in monthly installments as earned for the number of years remaining on the contract. The Severance Pay amount shall only include percentages of unpaid Base Salary for those years

of the Contract Term that follow the year in which a termination without "good cause" occurs; it being understood that full Base Salary shall be payable to JOSEPH through the current year in which a termination without "good cause" occurs.  The applicable percentages are the following:

| | | |
|---|---|---|
| Year One | April 1, 2014 – March 31, 2015 | 100% of Base Salary |
| Year Two | April 1, 2015 – March 31, 2016 | 100% of Base Salary |
| Year Three | April 1, 2016 – March 31, 2017 | 100% of Base Salary |
| Year Four | April 1, 2017 – March 31, 2018 | 75% of Base Salary |
| Year Five | April 1, 2018 – March 31, 2019 | 75% of Base Salary |
| Year Six | April 1, 2019 – March 31, 2020 | 50% of Base Salary |

If buyout is executed, the ASSOCIATION shall have no further obligation or liability to JOSEPH for remuneration of any type.  Additionally, buyout would be mitigated should JOSEPH secure employment elsewhere, with an offset of earnings from JOSEPH's new employment up to the full amount owed.  JOSEPH hereby agrees to fully disclose the terms and compensation she is to receive during the years covered under this Contract.

## ARTICLE VIII

## WAIVER OF BREACH

The waiver by either party of a breach of any provision of this Contract shall not operate or be construed as a waiver by that party of any subsequent breaches.

## ARTICLE IX

## SEVERABILITY

In the event that any provision of this Contract shall be deemed invalid, unreasonable or unenforceable by any Court of competent jurisdiction or because of NCAA Rules or Bylaws, such provision shall be stricken from the Contract or modified so as to render it reasonable, and the remaining provisions of this Contract or the modified provision shall continue in full force and effect and be binding upon the parties so long as such remaining or modified provisions reflect the interest of the parties at the date of this  Contract.  Any such stricken items shall be subject to renegotiations at the first possible time, subject to right of refusal by the ASSOCIATION.

## ARTICLE X

### NOTICE

All notices hereunder shall be in writing and shall be given by personal delivery, registered or certified mail or telegraph to the following addresses:

| | |
|---|---|
| As to MACHELLE JOSEPH: | As to ASSOCIATION: |
| Head Women's Basketball Coach | Director of Athletics |
| Georgia Tech Athletic Association | Georgia Tech Athletic Association |
| 150 Bobby Dodd Way | 150 Bobby Dodd Way |
| Atlanta, Georgia 30332-0455 | Atlanta, Georgia 30332-0455 |

## ARTICLE XI

### APPLICABLE LAW

This Contract shall be construed in accordance with the laws of the State of Georgia.

## ARTICLE XII

### SUCCESSORS AND ASSIGNS

This Contract shall inure to the benefit of and be binding upon the successors and assigns of the ASSOCIATION and JOSEPH.

## ARTICLE XIII

### HEADINGS

The headings at the beginning of each paragraph and sub-paragraph of this Contract are for convenience only and shall not in any way affect the interpretation of any paragraph of this Contract or the entire Contract.

## ARTICLE XIV

### EXECUTION IN COUNTERPARTS

This Contract may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Contract.

## ARTICLE XV

## REMEDIES

The remedies provided for herein or otherwise available to the parties shall be cumulative and no one such remedy shall be exclusive of any other and the exercise of any one shall not preclude the exercise or be deemed to be a waiver of any right or remedy at law or in equity which may be available to a party, including any rights to damages or injunctive relief.

## ARTICLE XVI

## ADDITIONAL DOCUMENTS

The parties shall execute and deliver any and all additional papers, documents and other instruments and shall do any and all further acts and things reasonably necessary in connection with performance of their obligations hereunder to carry out the intent of this Contract.

## ARTICLE XVII

## ENTIRE AGREEMENT

This Contract represents the entire understanding of the parties, and neither party is relying upon any representation not contained in this Contract.

IN WITNESS WHEREOF, the parties have signed this contract on the 20th day of October, 2014.

MaChelle Joseph
Head Women's Basketball Coach

GEORGIA TECH ATHLETIC ASSOCIATION

Michael Bobinski
Director of Athletics

Marvin Lewis
Associate Athletic Director, Finance & Administration

Dr. G.P. "Bud" Peterson
President
Board of Trustees

-13-